Having reviewed the competent evidence of record, and having the benefit of the positions of the parties, the Full Commission affirms the Opinion and Award of the deputy commissioner.
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing as:
 STIPULATIONS
1. Pre-Trial Agreement
2. Hearing Transcript from June 24, 1996 Hearing held by Deputy Commissioner Lawrence Shuping
3. Indexed Packet of Medical Records
a. Beach Medical Care
b. Albemarle Radiology, Ltd.
c. Atlantic Neurosurgery, P.C.
d. Chesapeake General Hospital
e. Coastal Rehab, Inc.
f. Albemarle Neurologic Associates, Inc.
g. Randall L. Sherman, M.D., F.A.C.S.
h. Dr. J. Abbott Byrd, III.
4. Opinion and Award by Deputy Commissioner Lawrence B. Shuping, Jr. filed April 8, 1997
5. Deposition of Dr. Randall L. Sherman of January 14, 1997
6. Deposition of Dr. Lloyd P. Hitchings of December 6, 1996
7. North Carolina Industrial Commission File
a. December 31, 1998 Order
b. July 26, 1999, Plaintiff's Motion for Medical Treatment
c. August 3, 1999, Defendants' Response
d. August 12, 1999, Defendants' letter to Deputy Commissioner Hoag
e. August 12, 1999 Administrative Order
f. September 13, 1999, Defendants' letter to Chairman Howard Bunn
g. Defendants Form 33, Request for Hearing
 ***********
Based upon the competent evidence of record, the Full Commission makes the following additional:
 FINDINGS OF FACT
1. At the time of the deputy commissioner's hearing, Plaintiff was a 58-year-old male with a GED enrolled in community college. Plaintiff's work history consisted primarily of manual labor. Plaintiff's past medical history was significant in that he had a spinal fusion and diskectomy in 1964 as the result of a football injury. This was performed at Virginia State Penitentiary while he was incarcerated.
2. In 1989, Plaintiff sustained a whiplash injury to his neck as the result of a motor vehicle accident.
3. In November of 1993, Plaintiff began his employment with Defendant as a night bagger. Plaintiff's duties included rounding up and returning store grocery carts, bagging groceries and some mopping.
4. On or about June 29, 1994, Plaintiff was pushing grocery carts when he felt a pop in his left hip.
5. On September 12, 1994, Plaintiff saw Dr. Channer, Beach Medical Care. Dr. Channer referred Plaintiff to Dr. Swingle. On September 19, 1994, Plaintiff saw Dr. Swingle. Dr. Swingle recommended Plaintiff undergo an MRI.
6. On September 26, 1994, Dr. Swingle gave Plaintiff a diagnosis of degenerative lumbar disk disease, possibly small disc herniation versus bony spurring on the left at L4-5 with normal objective exam. Dr. Swingle further noted significant embellishment of other signs and symptoms. Dr. Swingle recommended Plaintiff undergo a course of physical therapy.
7. On October 24, 1994, Plaintiff reported his back was significantly better but reported new symptoms of neck, left shoulder and arm pain. Dr. Swingle noted embellishment of symptoms and released Plaintiff to follow-up with his treating physician Dr. Channer.
8. At the June 24, 1996 hearing, Plaintiff testified he woke up on December 14, 1994, "on the wrong side of the bed" and had an attitude problem. Plaintiff testified that the attitude problem stayed with him throughout the day. When asked to take lunch, Plaintiff refused, quit and walked off the job without giving notice.
9. On February 13, 1995, Plaintiff saw Dr. Lloyd Hitchings, Neurologist, upon referral by Dr. Channer. Plaintiff complained of low back pain, with numbness and pain in his left leg. Dr. Hitchings recommended Plaintiff undergo nerve conduction studies which were performed on February 24, 1995, and were normal. Dr. Hitchings referred Plaintiff to Dr. Sherman.
10. On March 14, 1995, Plaintiff saw Dr. Randall Sherman, Neurosurgeon. Dr. Sherman believed Plaintiff had exacerbated his congenital spondylolisthesis. Dr. Sherman recommended conservative treatment and referred Plaintiff to continue treating with Dr. Hitchings.
11. By letter dated May 15th, 1995, Dr. Hitchings found Plaintiff at maximum medical improvement and rated Plaintiff at zero (0%) percent permanent partial disability.
12. Dr. Hitchings never took Plaintiff out of work nor placed work restrictions on him. Based on his objective exam, Dr. Hitchings opined that Plaintiff was physically capable of continued work following December 1994. Dr. Hitchings also found that Plaintiff was a not a surgical candidate.
13. On June 1, 1995, Plaintiff returned to work with Coinjock Marina. Plaintiff worked 40 hours a week. Plaintiff's duties included pulling lines, tying up boats, refueling, mowing grass, throwing out trash and other physically demanding work. Plaintiff testified he pulled lines for large ships up to 125-foot yachts. Plaintiff testified the inch and a quarter lines he lifted were heavy.
14. On April 16, 1996, Plaintiff saw Dr. Sherman. Dr. Sherman recommended Plaintiff undergo a repeat MRI which revealed lumbar spondylolisthesis and the degenerative disk at L4-5. Dr. Sherman recommended conservative treatment and advised Plaintiff to continue under the care of Dr. Hitchings. Dr. Sherman never took Plaintiff out of work or placed work restrictions on Plaintiff. Dr. Sherman testified Plaintiff was physically capable of continuing to work when he quit his job on December 14, 1994.
15. On April 26, 1996, Plaintiff saw Dr. Sherman. Dr. Sherman found Plaintiff essentially unchanged. Dr. Sherman noted the lumbar spondylolisthesis with degenerative disc at L4-5 and L5-S1, which he described as "old." Plaintiff was released. On January 14, 1997, Dr. Sherman rated Plaintiff at a five (5%) percent permanent partial disability. Dr. Sherman testified that Plaintiff was a not a surgical candidate.
16. After last seeing Dr. Sherman on April 26, 1996, Plaintiff did not return or seek medical treatment until February 1999 — a period of almost three (3) years.
17. On February 16, 1999, Plaintiff saw Dr. Sherman. At this visit Plaintiff was complaining of back pain. Dr. Sherman stated, "All of this in my mind goes back along with his condition in his back, which is a Grade II spondylolisthesis and I doubt the fusion is solid. Whether it was never solid in the first place or whether his accident at Food Lion created further instability at the fusion site I do not know."
18. Dr. J. Abbott Byrd, from Virginia, saw Plaintiff one time on April 22, 2000, nearly six (6) years after the initial injury. Dr. Byrd related Plaintiff's condition to the June 1994 incident, but the Full Commission gives less weight to Dr. Byrd's opinion because Dr. Byrd only saw the Plaintiff on one occasion, approximately six (6) years post the alleged date of injury; it does not appear that Dr. Byrd had the benefit of Plaintiff's past medical records; and Dr. Byrd's opinion rests primarily on the verbal history related to him by Plaintiff
19. Plaintiff chose not to offer deposition testimony of Dr. Byrd; therefore, the Full Commission has no further information upon which to judge the weight of Dr. Byrd's opinion.
20. Dr. Sherman testified under oath on October 6, 2000. In the judgment of the Full Commission, Dr. Sherman's testimony and medical reports should be given greater weight because he was Plaintiff's treating physician and treated Plaintiff since March 14, 1995. Dr. Sherman is in the best position to testify as to causation because of his ability to observe Plaintiff over this time period.
21. Dr. Sherman testified that Plaintiff has spondylolisthesis and that it is a congenital condition. Dr. Sherman testified that Plaintiff's spondylolisthesis was a longstanding problem for which the Plaintiff underwent surgery in 1964. Dr. Sherman testified that the condition would be expected to continue to deteriorate over time as it did with the Plaintiff over the thirty (30) year period since his 1964 fusion surgery. Dr. Sherman testified that it was expected the condition would continue to progress until it required surgical intervention. Dr. Sherman testified that people with spondylolisthesis experience lifelong back problems if left untreated.
22. Dr. Sherman further testified the Food Lion injury was not a significant injury and that, when he last saw Plaintiff in April of 1996, Plaintiff had returned back to his baseline level.
23. Dr. Sherman is in the best position to testify about medical causation in this case and, based on his testimony and the medical records, the greater weight of the medical evidence supports a finding that the Plaintiff has not sustained a substantial change of condition related to the minor Food Lion injury.
 ***********
The foregoing stipulations and findings of fact engender the following:
 CONCLUSIONS OF LAW
1. The greater weight of the medical evidence, including medical records and medical depositions, fails to establish that Plaintiff has sustained a substantial change of condition. N.C. Gen. Stat. § 97-47.
2. Pursuant to N.C. Gen. Stat. § 97-2(19) and § 97-25, Plaintiff is entitled to medical care for his compensable June 1994 injury as may be reasonably required to effect a cure, give relief, and will lessen the time period for disability. The medical evidence is that Plaintiff's aggravation or exacerbation of his pre-existing spondylolisthesis had resolved and Plaintiff had returned to his pre-injury baseline on or before April 1996. Plaintiff, therefore, has not proven by the greater weight of the competent medical evidence of record that his continuing need for medical attention is related to and necessary for treatment of his June 1994 injury. N.C. Gen. Stat. § 97-2(19), § 97-25.
 ***********
The foregoing stipulations, findings of fact and conclusions of law engender the following:
 AWARD
1. Plaintiff's claim is hereby DENIED.
2. The parties share bear their own costs.
 S/______________ RENE C. RIGGSBEE COMMISSIONER
CONCURRING:
 S/_____________ THOMAS J. BOLCH COMMISSIONER
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER